*545
 
 Ruffin, C. J.
 

 There was a mistake in supposing, that in the former case of
 
 Trice
 
 v. Turrentine,
 
 5
 
 Iredell 236, this Court held that the plaintiff was barred of any action, against the defendant, because he had not proceeded properly on a ca. sa. before that suit was commenced. All the Court could then decide was, that the plaintiff, for that reason, could not maintain that suit. But it was-never supposed, that the plaintiff might not by a proper ca. sa. entitle himself thereafter, to a
 
 scieri facias
 
 against the defendant, on which he could have judgment. That case,"however, after having been sent back with an order for a
 
 venire de novo,
 
 terminated in a non suit; arid then the present suit was commenced without any further
 
 ca. sa.
 
 The question is, can it be maintained. The plaintiff insists, upon two grounds, that it can. The one is, that,, notwithstanding the opinion formerly given to the contrary, the
 
 ca. sa.,
 
 which was issued, was sufficient, as the law then stood ; and the second is, that no
 
 ca. sa.
 
 is necessary, as the law stood when this suit was brought and now stands. The Court has bestowed much consideration on both points, and has come to a conclusion favorable to the plaintiff on each of them.
 

 On the first, the Court, in the case of
 
 Jackson
 
 v.
 
 Sampson,
 
 at this term, has said all that is necessary. For the reasons there given, the Court holds, that the
 
 ca. sa.
 
 and the return were sufficient to charge the defendant as bail for King ; and therefore the plaintiff would be entitled to a
 
 venire de novo
 
 for error in the instruction as to that issue.
 

 The second point arises under the Act of 1844, to which, his Honor referred. It enacts in the first section, “that hereafter no
 
 capias ad satisfaciendum
 
 shall issue upon any judgment, unless upon affidavit that the defendant has property sufficient to pay the debt, which cannot be reached by a
 
 f.eri
 
 facias,”
 
 fyc.
 
 The second section is, “that no Court shall permit an issue of fraud to be made tip and
 
 *546
 
 tried under the act for the relief of insolvent debtors, un» less the creditor shall make an affidavit, in writing, of his belief of the alledged fraud or concealment, and specify the particulars thereof.” And the third enacts, “that whenever a plaintiff shall be desirous of subjecting the bail of a defendant in any judgment to the payment thereof, he shall be at liberty to proceed in the first instance by
 
 scieri facias
 
 against the bail, without having previously issued a
 
 capias ad satisfaciendum
 
 against the defendant, but that the suit shall not stand for trial at the appearance term.”
 

 The first question is, whether the statute operated immediately on contracts and judgments then existing, or only on such as should be made or rendered afterwards. There is a natural presumption, that statutes are meant to operate prospectively; and, as far as they affect rights to things or of person they can, by one fundamental law, have no other operation But remedial acts, such as promote repose, enforce existing obligations by curing defects in existing remedies or adding a new one, are entitled to a benign interpretation, so as to give to every one the benefit of them at once. At all events, there is no ground for denying to their terms their full force, by excluding from their operation any case or person covered by the language. The terms of this act leave no doubt of the intention, that it should have full effect in all cases from its passing. The first section by the words “hereafter” and “any judgments,” includes all judgments, rendered or to be rendered, and denies thereafter a
 
 ca. sa.
 
 thereon, except upon the conditions prescribed! It was the purpose of the act, that a creditor should not have the process of a
 
 ca. sa.,
 
 as a part of his remedy, unless he could show by affidavit, that it was probable that process would produce satisfaction. That writ was to be used as a remedy for raising the money, and not solely as a punishment on the debtor. That is the legitimate and moral
 
 *547
 
 purpose
 
 of
 
 the writ, in view of the legislature, and hence it was then enacted, that “hereafter” it should not be used for any other. The second section speaks as plain, ly, that no Court shall permit an issue of fraud to be made up, so as to keep the debtor in jail or on bonds, unless the creditor could state a probable cause to change it, by setting forth some particular fraud and by swearing to his belief of it. Both of those sections might reasonably go into effect at once ; and, since that is so, and tiieir words authorize it, the Court must put that construction on them. It is believed, indeed, that no one has doubted the correctness of the construction ; for, up to the present time, no attempt has been made to take out a
 
 ca.
 
 sa, upon any judgment, though then existing,'without an affidavit. The third section was, obviously, produced by the first. The Act of 1777 required a
 
 ca. sa.
 
 before proceeding against bail; and, after enacting that a plaintiff’should not have a
 
 ca. sa.,
 
 but upon affidavit, it occurred to the writer of the Act of 1S44. that the remedy against bail might be injuriously impaired thereby. Therefore the provision 'was inserted, that without any affidavit and without any
 
 ca. sa,.
 
 the creditor should have his action against the bail at once. Hence the construction seems necessary, that the creditor was to be at liberty to go thus against the bail, in whatever case the
 
 ca. sa.,
 
 was denied to him by the previous section ; and as that has been shown to be immediately, and in all cases, except upon affidavit, it follows that all bail may be thus sued immediately. And with that, agree the words of the third section : for they are, “whenever” — at whatsoever time now or hereafter— “a plaintiff,” that is any plaintiff, “shall be desirous,” &c., he may have his
 
 scieri facias
 
 at once.
 

 It is said, however, that if the act be thus construed, it violates a vested right of the bail to have a previous
 
 ca. sa.
 
 and therefore that the legislature had not the constitutional power to pass it. The Court concurs in the po
 
 *548
 
 sition, that the legislature cannot
 
 inter partes
 
 divest aright. But this act, as the Court thinks, has no such purpose or effect. It operates on the remedy against the defendants and their bail and that only, and without in the least impairing the obligation of the contract between the bail and the creditor, or adding to its terms, or touching a vested right. It has been so often said, that there can be no vested right in a remedy, and that the legislature hath authority to abrogate or modify remedies, or create new ones, that no authority need be cited therefor. It is established every where in this country. The only question in such cases is, whether the act operates upon the remedy, or, under that guise, annuls contracts or destroys rights.. If a statute take away all remedy for an acknowledged right or on contracts of a certain description, which were lawful when made, the Court, however reluctantly, would be obliged to say, that the legislative power had been transcended for, without some remedy contracts would, in truth, have no legal obligation, and rights no value. But w’hat particular remedy shall lie in each case ; whether it shall be more or less direct or expeditious, within what period it shall be prosecuted, and with or without what reasonable guards against abuses of different modes of proceeding ; and many other matters of the like kind, are all proper subjects of legislative discretion, and, of course, the will of the law makers is binding on the citizen. An action of assumpsit, for example, may be given on an existing contract, on which debt only laid before or
 
 vice
 
 versa; as where assumpsit was given to the assignee of a bond against the obligor, or debt to the assignee against the maker of a note. So, reasonable statutes of limitation have been held to apply to actions on contracts, entered into before the law passed. So, a statute may prohibit certain pleas, unless verified by tho party’s oath. The legislature might, no doubt, on the other hand, give the remedy by an attachment on an existing
 
 *549
 
 contract without an affidavit to the debt or the absconding or foreign residence of the debtor : or might require an affidavit of debt or of a purpose to abscond as a prerequisite to holding a defendant in an ordinary action to bail. The policy of such enactments might in many cases be doubtful. But the power to make them, as long as. they are limited to the method of proceeding, cannot be denied, nor, indeed, the usefulness of the exercise of the power in many cases. The act under consideration seems to be one of that kind purely. The whole scope of it is to regulate the remedy against the bodies of the defendants, in judgments, and that against their bail. There is nothing, else within the purview. It does not in the least touch the contract of the bail, or give the creditor a right against the bail, which he had not before. What is the contract of bail in our law? It is an obligation entered into by the bail with the principal in double the sum for which the defendant in a writ is held in arrest, payable to the sheriff by his name of office and assignable by him to the plaintiff, and dischargeable upon the prisoner’s appearance and rendering himself at the day and place required in the writ, and his sureties discharging themselves therefrom as special bail of such prisoner.
 
 Rev. Stat.ch.
 
 10,
 
 sec.
 
 1-2, and
 
 ch.
 
 109,
 
 sec.
 
 19. That is the whole contract, as it is set forth in the statutes. It is a conditional contract and not an absolute engagement by the bail to pay the debt; and, clearly, the legislature cannot convert it into an absolute obligation by other means, than the nonperformance of the conditions in it. Those conditions are such as render the contract of the bail, in substance, that of bail to the sheriff and bail to the action in England. They are, that the bond shall be forfeited, unless the defendant shall appear to the action or unless the sureties shall discharge themselves as special bail. The provision for the discharge of the bail obviously refers to the terms of the engagement at common law of special bail
 
 *550
 
 or bail above, as they are indifferently called. Those are, that, if the defendant be condemned in the action, he shall pay the condemnation money or render himself a prisoner for the same, or, if he fail to do so, the bail undertake to do it for him. 3
 
 Blk. Com.
 
 291, appen. III, sec. 5
 
 Archb. Pr.
 
 102, 1
 
 Sellon’s Pr,
 
 150. That is the whole contract in England, and the only difference between the contract of the bail there and here, is in the form merely ; it being there by recognizance or bail price, as it is called, and here by bond given to the sheriff, as being the more convenient mode, instead of requiring the party to carry his bail to any and every Court in the State. Now. there is, certainly, nothing in the act of 1844, which interferes with that contract, either in its terms or its spirit. By the Act of 1777, which prescribed that form of a bail’s engagement, it was further provided, in favor of the defendants and their bail, that the latter might, under that contract, discharge themselves, not merely by rendering the principal at the day of condemnation, but at any time before judgment against the bail — thus extending the time for the performance of the condition. It is agreed, that a bond entered into in that state of the law cannot be effected by a subsequent statute, which would deprive the bail of the right thus to render the principal; for that is a part of the contract, as it enters into the condition. But in respect of the remedy, which the creditor is to have against the bail for failing to pay the condemnation or to render the principal at all, the matter is different; and it is under the control of the legislature. It might, for example, be enacted, that debt or covenant might be brought on the bond, instead of a
 
 scieri facias.
 
 So, instead of issuing a
 
 ca. sa.
 
 it might be provided, that the creditor should malte a personal demand on the bail to render the principal ; or instead of one
 
 ca. sa.
 
 there should be two ; or, as here, that none should be necessary. That a provision for a
 
 ca. sa.
 
 is not a part of the con
 
 *551
 
 tract, but a mere regulation of the remedy, is clear, from the fact that a
 
 ca. sa.
 
 need not be set forth in the
 
 scieri facias
 
 or declaration, but it is matter of defence to the action merely.
 
 Arrenton
 
 v.
 
 Jourdon, 4
 
 Hawks. 98.
 
 Gray
 
 v. Hoover, 4 Dev. 475. It was argued, indeed, that the contract was entered into in reference to the law then regulating the remedy, and therefore it ought to be regarded as incorporating those provisions of the law. But that is arguing in a circle, and amounts to a denial, in another form, of the legislative power to modify remedies in any case. Persons may, indeed, be supposed to enter into contracts in reference to the existing remedy on them. But that is not of the essence of the contract, and can only be supposed to have such reference to the remedy as being likely to continue, indeed, but, still, as being subject to the constitutional power of the legislature to change it. Upon the whole, therefore, the Court holds, that the Act of 1844 gives the plaintiff this suit, without a previous
 
 ca. sa.;
 
 and, consequently, as far as that matter goes, that the plaintiff would be entitled to judgment
 
 non obstante veridicto,
 
 that there was no
 
 ca.sa.
 

 But the state of the pleadings upon the statute of limitations is such, that the plaintiff cannot have judgment on them and the verdict rendered thereon. The proviso in the act of 1715 gives, after an arrest of judgment or a non-suit in either of the actions therein mentioned, one year to commence a new suit. But it is confined to those actions, and has nothing to do with the limitation to actions against bail. That is created by a subsequent statute, which has different provisions on this subject; 1831 eh. 18. It makes four years after the judgment rendered against the principal a bar to the suit against the bail, with several provisos, however; of which, one isf that, if the plaintiff shall sue his
 
 sci. fa.
 
 and be therein non-suited, the time which elapsed between the day of issuing that
 
 sci. fa.
 
 and the non-suit, shall not be reckoned
 
 *552
 
 as a part of the four years. It is plain, then, that the matter replied here, and on which the defendant took issue, namely, that this suit was brought within a year after a non-suit in a former suit, and the verdict thereon does not in the least inform the Court, whether this suit was or was not brought within four years after the judgment against the principal, or, if it was, whether there • were stili four years,'after deducting the time the former suit pended. The matter of the issue is, in truth, totally -immaterial, and the bar alleged by the defendant has not • been effectually passed on.' The plaintiff cannot therefore have judgment; but there must be a repleader, by ■ setting aside the defendant's rejoinder and the plaintiff's •replication to the plea of the statute of limitation — thus going back to the first fault, which is the rule in such cases. The manner of doing so appears in
 
 Jefferson
 
 v.
 
 Morton, 2
 
 Sauhd. 19. The counsel for the defendant insisted, indeed, that there ought not to be a repleader, because without it the plaintiff cannot have judgment, and, because it is not grantable in favor of the party who made the first fault in the pleadings. The position,as stated, is true in part only, and is misapplied in the argument. The rulé really is, that if the verdict on the immaterial issue be given against him. who made the first fault, no repleader shall be granted : but otherwise, if it pass for him. It is so laid down in
 
 Kemp
 
 v.
 
 Crews,
 
 1 L. Ray. 167, and by Mr. Justice Buller in
 
 Webster
 
 v.
 
 Bannister, 1
 
 Doug. 393, and was acted on in
 
 Tryon
 
 v.
 
 Carter, 2
 
 Str. 994, and in divers other cases. The reason of the distinction is to prevent parties from falsely alleging, immaterial matter, and thereby increasing the delays and •expenses of litigation. If, after the party has had the immaterial issue formed against him, enough does not appear in the record to authorize judgment for him, he cannot have it, nor can he be entitled to make the other party condescend to a better issue. But if it be
 
 *553
 
 found for him, it is thereby shown that his fault was not in an attempt to palm a falsehood on the Court, but con-, sisted in a mistake of the law merely ; and, then, as in the case of a plea in abatement over-ruled on demurrer, it is allowed to the party to make up an issue on the point in controversy, which will bring the suit to a determination on the merits. In such a case the Court awards a repleader for its own sake, that it may be seen for which side the judgment ought to be given.
 
 2 Tidd’s Pr.
 
 922.
 
 Tronbat's Edit. 2 Wms. Saund.
 
 319,
 
 b.
 
 For the rule is as laid down by Lord Mansfield in
 
 Rex
 
 v.
 
 Phillips,
 
 1 Bur. 292, that, when the finding does not determine the right, the Court ought to award a repleader, unless it appear upon the whole record, that no manner of pleading the matter could have availed. Here the verdict is for the plaintiff, and therefore he ought
 
 prima facie
 
 to have judgment. It is the defendant, who says there can be no judgment, because the issue was immaterial and the merits are not determined. Now the consequence of that is not, that the defendant ought to have judgment, but that such, an issue shall be taken as will bring the cause to a decision on the merits in fact and law. That can only be done by a repleader in the manner above mentioned, and it was error in the Superior Court not to have awarded it.
 
 Staple
 
 v.
 
 Hayden,
 
 2 Salk. 579. The judgment must therefore be reversed and the cause remanded with directions to award a repleader, and then a
 
 venire denrna.
 

 Per Curiam.
 

 Judgment accordingly.